WESTERN DIST. *August*, 1834.

FLOWER ET ALS. *vs.* O'CONNER.

## W. & D. FLOWER *vs.* O'CONNER.

APPEAL FROM THE COURT OF THE THIRD JUDICIAL DISTRICT, THE JUDGE THEREOF PRESIDING.

Where parties agree to submit the matters in controversy between them, in a suit pending, to judicial arbitrators, it by no means follows, that the suit is to be dismissed without the consent of the plaintiff, on the motion or exception of the other party.

A plea of usury is not considered a peremptory exception, going to extinguish the action, and will not be received pending the trial, after the jury is sworn,

The plaintiff may compel the production of accounts or documents, furnished by him, in the course of business, and which are in the hands of the opposite party, although they might not be legal evidence in the cause, when produced, but are open to every legal objection.

The possession of accounts rendered to the defendant, when called for, may be evidence against him, that such accounts were rendered, *i. e.* to prove *rem ipsam.* On refusal to produce them, the plaintiff has a right to give his affidavit in evidence to the jury, describing their contents, and calling for the documents.

When an application is made for the production of documents, in the possession of the opposite party, unaccompanied by affidavit, and duplicates of them are already in court, the order to produce them, will be refused.

The affidavit of the party is insufficient to establish the loss of a note, but it is admissible in evidence, as the basis of other proof, either positive or circumstantial.

WESTERN DIST.
*August*, 1834.

FLOWER ET ALS.
*vs.*
O'CONNER.

In the cross-examination of plaintiff's witness, the defendant cannot require him to detail declarations of the defendant, made out of the presence of the plaintiff, and which make evidence against him.

On cross-examination, plaintiff's witness becomes that of defendant, and the latter cannot make his declarations, made out of the presence of the other party, evidence in his own favor.

An attorney at law, who receives, or is to receive a per centage on the amount of money he recovers, or a stipulated fee, is a competent witness to testify in his client's cause, and is not thereby disqualified, on the score of interest, when that interest consists in his *honorarium*.

Attorneys at law are not inhibited from stipulating for a commission, or per centage on collections to be made by them, and such bargains do not render them incompetent to testify.

An error in calculating the highest rate of interest, by which it exceeds the legal amount one hundred dollars or so, will not be considered as charging usurious interest.

Usury may be shown, and taken advantage of, even when it is not pleaded, if it appears from the petition, or evidence offered by the plaintiff, that more than ten per cent. was stipulated.

The estate of the son, dying without issue, leaving only his mother to inherit, becomes her paraphernal property, and she has a right to administer it, without the interference of her husband.

The acceptance of the succession of her son, by the mother, with the consent of her husband, and the benefit of inventory was an engagement, as relates to creditors, that if she did not administer the estate according to law, as beneficiary heir, she would be personally liable for the debts.

Where a mass of facts, relating to the settlement of a succession and the accounts of a mercantile firm, and where fraud and circumvention is charged, are all submited to a jury, who appear to have carefully allowed the debits and credits between the parties, their verdict will not be disturbed.

This is an action, instituted by W. & D. Flower, against the defendant, as heir at law of her deceased son, Stephen Bell, whose succession it is alleged, she has accepted, with

benefit of inventory ; and to charge her with the balance of a mercantile account against the deceased, amounting to ten thousand six hundred and sixty-eight dollars, which the plaintiffs allege she is liable to pay, and for which they pray judgment, with ten per cent. interest thereon, from the 10th December, 1820, at which time she is charged with having given a written promise to do so.

The defendant pleaded, as *res judicata* to the plaintiffs' demand, the fact of another suit having been instituted against her, by the same plaintiffs, for the same claim, in October, 1826, to which she pleaded in substance, that she was heir under the benefit of inventory, to the said Stephen Bell, which plea was sustained, and the court decided it had no jurisdiction of the case, and that judgment stands as *res judicata* in the present case.

In an amended petition, the plaintiffs charge the defendant with assuming the quality of universal heir, of intermeddling and taking possession of her son's succession, without the authority of justice, by which she became personally liable for his debts, &c.

The defendant replied, that she accepted her son's estate, with benefit of inventory ; that at the time of his death, she was a married woman, and never interfered with, or received any portion of his estate ; being married, she avers she is not liable for his debts, and expressly pleads her disability, and that she is not responsible, if no inventory was taken thereof.

She then pleads a general denial ; admits her signature to the account sued on, but that it is not binding, having been made without the authorisation of her husband.

In a supplemental answer, she reiterates the averment, that her signature to, and approval of the account of plaintiffs', against the succession of her son, is not binding, because she was surprised into it by the plaintiffs, and it was done without the authority and consent of her husband, and without value or consideration ; that she acted in relation to her son's estate, for the benefit of the creditors, and applied it to the discharge of his debts, and that the plaintiffs have received

more than their proportion, according to the amount of their claims against it.

A trial was had on this state of the pleadings, and appeal taken from the judgment then rendered, to the Supreme Court.    See 8 *Martin, N. S.* 555.

On the return of the case, at May term, 1831, the defendant's counsel moved to dismiss the suit, on the ground, that the parties had mutually submitted the cause to judicial arbitrators ; the motion was overruled, and a bill of exceptions taken.

On the final trial, the defendant's counsel moved the court to grant an order on plaintiffs, for the production of the originals of two documents, copies of which were exhibited, marked **Y**, showing the amount of merchandise, sold by an auctioneer in New-Orleans, by order of plaintiffs, but who had rendered the accounts of sale to Bell ; copies of these accounts were annexed to the motion, which was overruled.

The defendant's counsel next moved the court, for leave to file the plea of usury, which was overruled, as the trial had commenced, and the jury were sworn ; the opinion of the court was excepted to.

The plaintiffs made an affidavit, of the contents of a certain account current, rendered by them to Bell, in May, 1819, in which they state, they had credited the proceeds of twenty-two bales of cotton to him ; and which account they allege, together with several other notes and accounts, specified in the affidavit, are in possession of the defendant's counsel ; they obtained an order for their production, in open court, on the next day.   On the next morning, the counsel for the defendant moved to rescind this order, on the following grounds :

1. That the documents called for, are not legal evidence in plaintiffs' favor.

2. They are extracts from the books of the plaintiffs, which are not of themselves, legal evidence, consequently extracts from them are less so.    4 *Martin, N. S.* 383.

3. Extracts from merchants' books, are not admissible in evidence.    4 *Martin, N. S.* 483.

26

The motion of the counsel was overruled, and the accounts and notes required to be produced. A bill of exceptions was taken. Several other bills of exception were taken, to the decision of the court, on points arising in the progress of the trial. They are all noticed in the opinion of this court.

The parties then went into an examination of the accounts between the plaintiffs and the late Stephen Bell, embracing a variety of commercial transactions and intricate accounts, and after hearing many witnesses on both sides, as to the state of the accounts on both sides, the jury returned a verdict for the plaintiffs of five thousand seven hundred and thirty-six dollars and fifty-three cents.

The defendant's counsel moved the court for a new trial, on the following grounds, viz:

1. The court erred in refusing the plea of usury, by which a large sum of usurious interest was allowed.

2. The court erred, ruling against the defendant, in the several points mentioned in the bills of exception.

3. The verdict is contrary to law and evidence, &c.

The motion was overruled. Judgment was rendered against the defendant, as heir of her deceased son, S. Bell, for the amount found in the verdict, from which she appealed.

*Ripley & Haraldson,* for the plaintiffs.

*Turner,* for the defendant.

1. The District Court improperly refused the defendant the privilege, of showing that this case had been, by consent of parties, referred to judicial arbitrators, for decision.

2. The defendant should have been permitted, to avail himself of the plea of usury, at the time when he offered it.

3. The court improperly overruled the motion, to rescind the order in favor of the plaintiffs, for the production of certain accounts and documents, alleged to have been rendered by the plaintiffs to the late Stephen Bell, in his life-time.

4. The court erred, in depriving the defendant of legal proof, by refusing the motion for an order upon the plaintiffs

to produce two documents, being accounts of sales of goods, made at public auction, under the direction of plaintiffs, for account of Stephen Bell.

5. The contract sued on, was executed in error, being an error of fact, in relation to the substance of it; which is therefore illegal and void.

6. The contract is shown to be usurious, and the defendant has a right to take advantage of its illegality, as an error, apparent on the face of the record, in order to have the usury decided on, in this court. 4 *Martin, N. S.* 542.

7. The finding of the jury, is evidently for a much larger sum, than was due, if in fact any thing was due.

8. The plaintiffs should be required to give credit, and be answerable for the amount of the notes and accounts assigned to them, which they have not done.

9. It is apparent on the face of the record, that the judgment is erroneous, in not pursuing the verdict. The jury found interest from the 18th of February, 1825, and the judgment gives interest from the 11th of February, 1825.

10. The instrument sued on, is not binding on the defendant. She was a married woman at the time of its execution, which was done without the authorisation of her husband. It further appears, from the very terms of the act, she did not intend to render herself personally responsible. She is not responsible as heir to her son, not having accepted his succession ; nor has she done any act which would make her responsible for the debts of her son.

*Bullard, J.,* delivered the opinion of the court.

The plaintiffs sue to recover of the defendant, the amount of a debt due by one S. Bell, in his life-time, alleging that the defendant is his heir at law, and has rendered herself liable as such unconditionally. It appears by the record, that soon after the death of Bell, the defendant went before the parish judge, and with the consent of her husband, declared that she accepted the succession with the benefit of inventory. Some months after this she signed an account rendered by the defendants against the succession, showing a balance due

WESTERN DIST.
August, 1834.

FLOWER ET ALS.
vs.
O'CONNER.

them of about thirteen thousand dollars, approving the same, and authorising its payment with interest at ten per cent.

On a former trial in the District Court, this instrument was regarded as a nullity, it having been signed without the consent of the husband, and the court also refused to receive as evidence the petition of the defendant, authorised by her husband, to be admitted as beneficiary heir of her deceased son. On appeal to this court, it was decided that the court erred in rejecting the evidence, and instructing the jury, that her acknowledgment of the account was void, and that the evidence ought to be admitted, leaving its effect to be judged of by the jury. See 8 *Martin, N. S.* 555.

On the second trial, the jury gave a verdict in favor of the plaintiffs for a large balance, which they found due, with interest, which, after an unsuccessful attempt on the part of the defendant to obtain a new trial, was followed by a judgment of the court; from which the defendant appealed.

The case comes before us on very numerous bills of exception, assignments of error and points filed by counsel, and a full statement of facts.

Where parties agree to submit the matters in controversy between them in a suit pending, to judicial arbitrators, it by no means follows that the suit is to be dismissed without the consent of the plaintiff, on the motion or exception of the other party.

1. The first bill of inception, to which our attention is drawn, was taken to the refusal of the court to dismiss the suit, at the instance of the defendant on her exception, that all matters in controversy, had been submitted to judicial arbitrators, and that the court could no longer take cognizance of the cause. It appears that the court refused to receive the plea, on the ground that it was not a peremptory exception, and that it had previously been decided on motion, at the last term. We are of opinion, that the judge did not err; although parties may agree to submit to arbitrators, matters in controversy in a suit pending, it by no means follows, that the suit is to be dismissed, without the consent of the plaintiff, on the motion or exception of the other party. In this case, it did not appear that such was the agreement.

A plea of usury is not considered a peremptory exception going to extinguish the action, and will not be received pending the trial after the jury is sworn.

2. The next bill of exceptions is to the refusal of the court to allow a plea of usury to be filed pending the trial. It was refused on the ground that it was not a peremptory exception, and that peremptory exceptions mentioned in the Code of

WESTERN DIST.
*August*, 1834.

FLOWER ET ALS.
*vs.*
O'CONNER.

Practice, are such only as go to the extinguishment of the whole action. In our opinion, the court was correct in refusing to receive the plea, after the jury was sworn.

3. During the progress of the trial, the court on an affidavit of the plaintiffs, ordered the production of certain accounts rendered by them to Stephen Bell, in his life-time, and which they alleged, were in the hands of the defendant's attorney. On the following day the attorney moved the court to rescind that order, on the grounds, 1st. That the documents called for, could not make legal proof in favor of the plaintiffs. 2d. That they were extracts from the books of the plaintiffs, and that if the books could not be admitted, much less could extracts be good evidence in their favor; and, 3d. That extracts from merchants' books, are not admissible. The court overruled the motion, on the ground that when the documents were produced, they would then be subject to objections to their admissibility. A bill of exceptions was taken. The contents of the accounts rendered, might not have been evidence in favor of the plaintiffs, but the possession of them by the party, may have been evidence against her, that such accounts were rendered; that is, to prove *rem ipsam*. Whether admissible or not for any purpose, the order was properly given, and the party had always the right to object to their being read to the jury. If inadmissible, it is difficult to conceive what harm their production could have produced, and why they were not produced. On the neglect or refusal to produce the documents, the plaintiffs had a right to give their affidavit in evidence to the jury, as evidence in the cause. We think the court did not err.

4. In the progress of the trial, the defendant's counsel moved for an order on the plaintiffs to produce the two documents marked Y, annexed to the written motion. This was refused by the court, and the *bill of exceptions taken*. It is true, the judge did not give the best reason for refusing; his reason was that the transaction between the parties, being a mercantile one, the call should have been for all the books and papers of the plaintiffs, and that the defendant could not single out a particular paper, isolated from the rest. On referring to

The plaintiff may compel the production of accounts or documents, furnished by him in the course of business, and which are in the hands of the opposite party, although they might not be legal evidence in the cause, when produced, but are open to every legal objection.

The possession of accounts rendered to the defendant, when called for may be evidence against him that such accounts were rendered, i.e. to prove *rem ipsam*. On refusal to produce them, the plaintiff has a right to give his affidavit in evidence to the jury, describing their contents, and calling for the documents.

When an application is made for the production of documents in the possession of the opposite party, unaccompanied by affidavit, and duplicates of them are already in court, the order to produce them will be refused.

documents Y, we find that they are accounts of auction sales, made for account of W. & D. Flower, rendered by Le Carpentier. As the application was not accompanied by an affidavit, as required by the Code, we are at a loss to know for what purpose the defendant sought the production of papers, of which duplicates were already in court. The refusal of the court to order their production, did not preclude the defendant from offering any evidence, which would tend to show the connexion of those accounts of sales with the present controversy; none is shown by the pleadings, and although we are not prepared to go the whole length with the judge *a quo*, yet, as there were some legal reasons, why the order should not be given, and no possible injury could result to the party from the refusal, we think the judge acted correctly in declining to give the order.

The affidavit of the party is insufficient to establish the loss of a note, but it is admissible in evidence as the basis of other proof, either positive or circumstantial.

5. The next bill of exceptions relied on, was taken to the ruling of the District Court, in admitting the affidavit of one of the plaintiffs, in relation to the loss of a note, which it is stated, was assigned, together with other notes and accounts, to the plaintiffs as collateral security, and which, when paid, were to be credited to the defendant. The reading of the affidavit was objected to on the ground, that the plaintiffs could not make evidence for themselves. According to the article 2258 of the Louisiana Code, the loss of a paper cannot be proved by the affidavit of the party alone. The loss must be shown, either by direct testimony, or by such circumstances *supported by the oath of the party*, as render the loss probable. The oath or affidavit of the party is, therefore, admissible as the basis of other proof, either positive or circumstantial. We think the court correctly admitted it.

In the cross-examination of plaintiff's witness, the defendant cannot require him to detail declarations of the defendant made out of the presence of the plaintiff, and which make evidence against him.

6. In the further progress of the trial, a witness introduced by the plaintiffs, being on his cross-examination, went on to detail certain declarations made by S. Bell in 1819, to him, relative to a draft, which he said he had received, and which would enable him to pay for the goods he had purchased. The plaintiffs' counsel moved the court to strike out all that part of his testimony, given as the declaration of Bell, on the ground that his declarations made out of the presence of the

WESTERN DIST.
*August*, 1834.

FLOWER ET ALS.
*vs.*
O'CONNER.

plaintiffs, ought not to be given in evidence to the jury. The court ordered the evidence to be stricken out, and the defendant took a bill of exceptions. On the cross-examination, the witness became the witness of the defendant, and the defendant being herself the heir of Bell, she could not make his declarations out of the presence of the other party, evidence in her favor, any more than she could her own. We think the evidence was very properly rejected.

*On cross-examination, plaintiff's witness becomes that of defendant, and the latter cannot make his declarations made out of the presence of the other party, evidence in his own favor.*

7. The last bill of exceptions relied on, was taken by the defendant to the refusal of the court to order the testimony of Mr. Haraldson, of counsel for the plaintiffs, to be stricken out on the ground of interest. On his cross-examination, he stated that "he was so far interested in the suit as to receive a certain per centage on the amount recovered, to wit : five per cent., but since the institution of the suit, he had received an amount of money in compensation and otherwise, which he deemed a sufficient compensation for his services." In addition to this declaration, he tendered a release. The court declined to order the testimony to be stricken out. By article 2262 of the Code, an attorney or counsellor at law, is forbidden, without the consent of his client, to disclose any thing which has been confided to him by such client ; but his being employed, does not disqualify him from being a witness in the cause. The same Code gives attorneys and counsellors an action against their clients, to recover their fees. It was not, we think, the intention of the legislature to exclude attorneys at law, on the ground of interest, when that interest consisted in their *honorarium*. It is true they are forbidden to stipulate for a part of the thing in controversy, and in one sense of the word, a per centage is a part of the thing, when that thing is money. But the court is of opinion, that they are not inhibited from stipulating for a certain commission on collections to be made by them, and that such a bargain does not render them incompetent to testify. Independently, therefore, of the release, we consider Mr. Haraldson a competent witness, and that the court did not err, in overruling the motion.

*An attorney at law who receives or is to receive, a per centage on the amount of money he recovers, or a stipulated fee, is a competent witness to testify in his client's cause, and is not thereby disqualified, on the score of interest, when that interest consists in his honorarium.*

*Attorneys at law are not inhibited from stipulating for a commission, or per centage on collections to be made by them, and such bargains do not render them incompetent to testify.*

In addition to these bills of exception, the defendant assigns for errors apparent, on the face of the record, 1st. That the contract sued on, is usurious. 2d. That the charge of the court delivered in writing, and contained in the record, is illegal and improper, and 3d. That the judgment differs materially from the verdict rendered.

As to usury, it appears in the record, that the amount found due on settlement, was to bear interest at ten per cent., and it fully appears both by admissions and proof, that in calculating that amount, there was an error of one hundred dollars, which was corrected. This does not appear to us an attempt to obtain a higher rate of interest than the law permits. On the contrary, we should infer the intention of the parties to agree on ten per cent., on whatever amount was really due, as such transactions are always subject to proofs of error.

The charge of the judge which is complained of, appears to the court fair and impartial. All questions of fact are left exclusively to the jury. They were correctly instructed, that fraud must be proved ; that a mere error of calculation of the amount due, without any intention to defraud on the part of the plaintiffs, or their agent, would not be sufficient ground to annul the contract, but reduce the amount. The last sentence is, " usury cannot be proved without being pleaded." This is perhaps too broad a proposition, and not stated with sufficient limitations. Cases may well be imagined, in which it might appear from the petition itself, or the evidence offered by the plaintiffs, that more than ten per cent., was stipulated, and in such a case, even without plea, the court would be bound to notice it, inasmuch as the law refuses an action to enforce such a stipulation. But if the judge only meant that the proofs must correspond with the allegations of the parties, we think him correct. In this case we think the pleadings such, as to have authorised proof of usury, if any had existed. No evidence was offered and rejected, on the ground that usury was not *specially pleaded.*.

On examination of the judgment, we find it to correspond with the verdict.

Having disposed of these points, we come to the merits. The defendant being the mother of S. Bell, who died without issue, became his heir at law, and was seized of his estate at the moment of his decease, subject however to her right, with the authorisation of her husband, either to renounce it, or to limit her liability to creditors, by accepting with the benefit of inventory. She went before the parish judge, and with the concurrence of her husband, declared her intention to accept the succession with the benefit of inventory. The estate of the son became the paraphernal property of the mother, and she had a right to administer it, without the interference of her husband. The acceptance of the estate with the consent of the husband, was an engagement, as relates to creditors, that if she did not administer the estate according to law, as beneficiary heir, she would be personally liable for the debts; that if she neglected to take an inventory, and other conservatory steps; if by disposing of the property belonging to the estate as her own, she put it out of her own power to make to the creditors, a fair exhibit of the means of the estate to pay its debts, then the creditors should have a right to consider her as having forfeited the benefit of inventory, and made herself unconditional heir. But it is argued, that the husband consented only to an acceptance with benefit of inventory, and she cannot be made heir unconditionally without his consent. To this there are two obvious answers: first, that the husband by assenting to her acceptance with the benefit of inventory, necessarily assented to her administration, as beneficiary heir, and to all the legal consequences of her neglect or mal-administration; and, secondly, that the husband having died in August 1821, it does not appear, that it was then too late for her to liberate herself, by causing an inventory to be made. It was not too late if in the meantime her acts had been merely conservative. These transactions run through a series of years, and this suit was not instituted until April, 1827. It is not pretended that any inventory has ever been made, and some of the property was shown on the trial, to be still in possession of the defendant. It is in evidence also, that she gave up one store of the

deceased, to her son, who acted as her agent. All the facts were laid before the jury, as well in relation to her management of the succession, as to the credits to which she was entitled, for the notes and accounts turned over to the plaintiffs as collateral security, and other payments made to them both before and after the written acknowledgment of the debt, on the 10th December, 1820 ; and also in relation to the errors in that settlement, and the alleged fraud and circumvention practiced by the plaintiffs. Those were questions peculiarly of the province of a jury. They seem to have credited her on the amount of principal, and accruing interest due on the 18th of February, 1825, with the sum of about thirteen thousand five hundred dollars. After a careful perusal of the record, we cannot discover that any credit was rejected, to which she was manifestly entitled, and this court cannot disturb the verdict.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.