Gurley, Jr., vs. City of New Orleans.

## No. 10,196.

### J. WARD GURLEY, JR., VS. THE CITY OF NEW ORLEANS.

Mandate is a consensual and imperfect synallagmatic contract. Gratuitousness does not appertain to its *essence*, but to its *nature*. It is lawful to stipulate a remuneration for services rendered. It differs from the hiring of labor, in this : that the hired person is not vested with any representative capacity and receives a *price* and not a stipend or *honorarium*.

A contract for the services of members of the legal profession is not a hiring of labor, but a mandáte.

A principal has the right to revoke powers of agency given by him for an indefinite period, and is not bound to indemnify the agent for all the services expected to be rendered, unless there exists a stipulation that the entire compensation shall be due by the mere fact of the immixtion of the agent with the matters of the agency. Such power to revoke and such contingent forfeiture are implied in such a case.

A contract made by a municipal corporation with one of its officers, for the collection of arreared taxes, during an indefinite period, for an eventual remuneration, is not a contract of hiring of labor, but of mandate, which terminates with the office of the contractee and which is otherwise revocable at will, the more so when the same is violative of prohibitory laws and there is no stipulation of liability for compensation.

Such contract is *ultra vires*, when the municipal corporation relieves one of its officers from the duty of collection, which is one of his functions, without additional pay, and intrusts it to another officer, or even to an individual, under terms which are onerous. Such contract may be repudiated by the corporation...

In such case, the contractee is not entitled to any compensation, after the time of revocation or repudiation.

APPEAL from the Civil District Court for the Parish of Orleans.
*Rightor, J.*

*Henry Denis* and *Harry H. Hall* for Plaintiff and Appellant:

1. On the trial of a rule *nisi*, to show cause why an injunction should not issue, the plaintiff's allegations must be taken for true, and the sole question is, whether such allegations make out a *prima facie* case and warrant the issuing of the writ. The Court should not go into the merits of the case. 29 Ann. 58; 30 Ann. 799.

2. There is no provision, either in the Charter of the City of New Orleans, or in the statutes of the State of Louisiana, which forbids the City Council to contract with a special attortorney-at-law for the collection of old taxes.

Gurley, Jr., vs. City of New Orleans.

3. If a municipal corporation has received the benefit of a contract at the expense of the other contracting party, even if the contract is *ultra vires*, the Court will hold the corporation liable to its obligation. 96 U. S. 341.

4. Municipal corporations have an implied or incidental authority to contract to the extent necessary to carry on their municipal affairs, unless specially prohibited by their charters, Dillon Munic. Corp., vol. 1, §443. and note 1, p. 469.

5. A municipal corporation has no power to repeal without cause an ordinance under which it has entered into a contract, if both the ordinance and contract were legally passed and entered into; and a court of justice should so declare. 39 Ann. 130.

6. The City of New Orleans can only be viewed by the courts as any other contracting party, and shall not be allowed to revoke her contracts and trample upon the rights of other parties. 17 Ann. 181; 20 Ann. 172; 12 Ann. 819.

7. An attorney-at-law is not, in his relation to his client, a mandatary, but a lessee of labor or industry; and the contracts made with him for the prosecution of claims, are bilateral and commutative contracts, and are not revocable at the will of the other contracting party. Troplong, Du Louage, vol. 3, p. 15, §795 *et seq.;* Pothier, Du Mandat, p. 95, No. 22; Laurent, Du Mandat, vol. 27, p. 382; 8 La. 181; 12 La. 68; 2 Ann. 652; 12 Ann. 698.

### *Carleton Hunt*, City Attorney, for Defendant and Appellee:

The Constitution of 1879 changed the method of collecting taxes. Articles 210 and 218 of the Constitution commanded tax collectors to proceed to sales without recourse to suit.

While prohibiting suits, the Constitution prescribed what should be done instead, but as the law of 1880 (Act 31, page 88) provided for giving notice to delinquents in case of State or parish taxes only, it was decided, that the former mode of making collection of taxes, that is, by suit, remained of force in New Orleans until otherwise provided by law.

By Act approved July 5. 1882, the General Assembly prescribed anew the method of collecting taxes imposed by the State for her own purposes, and the parish taxes as well. (Session Acts, page 119). On the following day the Legislature extended these provisions to the subordinate corporations of the State. Since then payment of taxes, whether due to the State or parish, or to incorporate villages or towns, or to the city, cannot be enforced by suit, but only in the manner provided by Act of July 5, 1882.

Under this legislation, the Treasurer of the City of New Orleans is the Tax Collector for the State, and cannot be divested, except by an Act of the General Assembly. of his functions as such. Within the sphere of its constitutional and legal attributes. the City Council is a legislature, and in the exercise of its power in relation to the collection of taxes due to the city, may empower a particular individual to collect the same for a fixed compensation; but the Council has the right at any time to change. modify or repeal the ordinance conferring such power and recall the mandate exercised thereunder.

The repeal of such an ordinance is not the violation of the contract. The law of hiring personal services for a term has no application to such dealing between parties. If any contract at all be created, it is the contract of mandate, and revocable at the will of the principal. C. C. Art. 3028. Hiestand vs. City of New Orleans, 14 Ann. 330, was correctly decided. The opinion of the Court in that case is of direct application to the case at bar.

––––––––

The opinion of the Court was delivered by

BERMUDEZ, C. J. The purpose of this suit is to enjoin the City of New Orleans from obstructing the execution of a contract which the plaintiff claims to have entered into with her, for the collection of certain back taxes, under certain terms and conditions, and which she pretends to have revoked and repudiated.

From an interlocutory *decree* refusing a preliminary injunction, and from a judgment sustaining an exception of no cause of action and rejecting the demand, the plaintiff appeals.

We deem it unnecessary to pass formally upon the correctness of the *decree*, for the reason that if it be true that the petition discloses no cause of action, it would follow, as a matter of course, that the preliminary injunction was properly declined, as, no such remedy can issue without sufficient showing — the converse proposition being equally true.

The plaintiff, an attorney-at-law, substantially avers in his petition that, by notarial act passed on the 19*th of June*, 1886, he entered into a contract with the City of Orleans, by which he undertook to recover and collect the taxes due the said city for the years 1880, 1881, 1882, 1883, 1884 and 1885; that this contract was made under the terms of an ordinance of the City Council and by proper and legal authority; that the stipulations between the contracting parties were all to the advantage and benefit of the city and onerous to plaintiff; that he has faithfully and diligently fulfilled all his obligations under said contract, at a great expense of money and labor, and is still actively engaged in the execution of said contract; but that the City Council, without any legal cause or reason, is attempting to set the same aside and pretends to repeal and annul the ordinance under which it was entered into.

Both the ordinance and contract are annexed to the petition as parts thereof. They set forth the nature of the services to be rendered and the compensation to be received therefor.

In order to determine whether this petition discloses a cause of action, it is necessary to consider the nature of the relations created between the parties, their legality, the term of their existence.

It is apparent, from the face of the ordinance on which the plaintiff relies, that its effect was to authorize the City Attorney to select a competent and suitable counsel for the collection of certain back taxes, under his supervision and control and that of the City Treasurer, who should receive certain remuneration, under certain onerous conditions, which it would serve no useful purpose here to set forth sepecifically.

It is also apparent that this ordinance was passed in consideration of section 24 of the City Charter of 1882, which provides, that the City Attorney shall have the appointment of all assistants or assistant counsel that the Council may allow him.

It is also apparent from the ordinance and from the act subsequently passed in furtherance of it, that the attorney chosen was to be and be-

came an assistant counsel of the city, attached to the department of the City Attorney, under whose supervision and control he was to remain.

This is so true, that the plaintiff presses in his brief, that he has so been appointed, contending that this section of the law, far from being prohibitory of his appointment, is an affirmative grant of authority for the same.

The plaintiff then became a municipal officer, attached to the City Attorney's staff, for a term co-extensive with that of this head of the legal department, ceasing to be such, when that term expired.

The charter making no provision for the salary, pay, or compensation of such assistant counsel, the city undertook to provide for the same, in the manner and to the extent, specified in the ordinance.

From this aspect of the relations between the plaintiff and the city, it clearly results that the ordinance and alleged contract under it, became inoperative as to him, the very moment that the City Attorney ceased to be, by the limitation of his term, a municipal officer.

It is not claimed, nor could it be, that the ordinance contemplated any undertaking by the plaintiff in his *individual* capacity. Hence, no pretension can be raised by the plaintiff that his rights, under the ordinance, continued in him individually after the term of office of the City Attorney had determined, which it did, in 1888, previous to the adoption of the ordinance complained of by the plaintiff.

Were it otherwise, however, the ordinance can be viewed only as an act of mandate conferring on an agent, a representative, the power of collecting debts due his principal, and allowing him an eventual compensation for his services.

It is not correct to say that the ordinance and the notarial act, in execution of it, constitute a contract which is not revocable, otherwise than by the consent of both parties.

It is perfectly true that as a rule a procuration is gratuitous, but the very text which so declares, provides, "*unless there has been a contrary agreement.*" R. C. C. 2991.

Under our Code, which has modified the Roman law, as well as under the French Code, the gratuitousness does not appertain to the *essence* but only to the *nature* of the mandate. Hence a derogation to the early rule is allowed by a formal or express stipulation; so much so, that the exceptions have become the rule and the rule the exception, as seldom indeed is it, that an agent acts without indemnity and by pure friendship.

Laurent says that the exception has absorbed the original fundamental rule.

In the definition which he gives of a *mandate*, Troplong says, that it is a consensual and imperfect synallagmatic contract by which one binds himself, either *gratuitously or for a remuneration* (honoraire) to manage and direct a licit matter for which he is to account. No. 5.

He treats lawyers as agents or mandataries, No. 16; he says that a contract for their employment cannot be viewed as a contract of hiring labor, Nos. 209, 215; that the *honoraire* is proper to the mandate, while the price is proper to the hiring, Nos. 171, 182, 201; that the principal may always revoke *ad nutum* the powers conferred, No. 704 *et seq.*, and when this occurs, remuneration is due up to then only, observing that it is for the mandatary to guard against such result by stipulating that the entire compensation shall accrue to him, by the solitary fact of his im-- mixtion, and that in the absence of such stipulation he has no cause to complain. No. 652.

See also Waterman vs. Gibson, 5 Ann. 672; Succession of Fowler, 7 Ann. 207, and Berlier, Tarrible and Bertrand, Discours et motifs au corps législatif, March, 1804.

It is not correct to urge that the ordinance and the notarial act, under consideration, are evidence of a *locatio operarum*, a hire of labor, for the obvious reason that the hired party is not vested with any representative capacity and receives a price and not a remuneration. He merely acts as an undertaker of work, and in no way as the agent of his hirer or employer. There exists such dissimilarity between the two positions and the functions of each are so distinct that they are incompatible. V. Laurent, vol. 27, No. 333, p. 375; No. 339, p. 334; No. 338, p. 382; No. 339, p. 384.

Taken altogether, the ordinance and the act are simply a mandate, vesting plaintiff with representative powers in his official capacity, conferring rights and imposing obligations.

They bear little or no affinity to the case against Heath, Mayor, 20 Ann. 172, for two patent reasons: *First*, that there, the contract entered into, with one who was at the time a municipal officer, was formed with him indidually; and, *second*, that the contract was violative of no law and did not infringe upon the rights or duties of any municipal officer of the City of New Orleans.

The plaintiff can derive no comfort from the ruling in the case of New Orleans Elevated Railway vs. Mayor, etc., 39 Ann. 130, from which he makes the following quotation:

"There can be no possible dispute that where a municipal corporation has passed a valid ordinance and under it, has entered into a valid contract subsequently executed, the council has no right to pass an ordi-

nance repealing the ordinance on false grounds; that such ordinance would be absolutely null and that a court of justice would so declare."

Surely this is excellent law. It is almost a truism; but it does not relieve the plaintiff, for, the trouble is here, that the original ordinance and the contract under it are *not* valid, and the last ordinance, which is based on *real* grounds, is well founded in law.

Of course, if the ordinance and the contract were valid, they would not have been abrogated by the Council; but as they were *ab initio* violative of prohibitory laws, the Council could repudiate them, as was done, the less so, as the time during which the contract was to last, was unlimited.

This indefinite existence, and the absence of a stipulation for absolute remuneration, implied the power of revocation by the city, at any time that it would be deemed advisable to terminate it, and a consent on the part of plaintiff to submit to such revocation.

To the above expressed views, it may well be added, that the contract propounded was *ultra vires*, viz : one which the city had no legal right to form and which it could at any moment as such, repudiate.

Indeed, under the terms of its charter, and of other appropriate and of subsequent legislation ( Act 119 of 1832, Act 98 of 1886 ), the duty of collecting the taxes is imposed upon the corporation treasurer, who is required to do so, without additional pay for such services, which form part of his official functions.

Such being the imperative behest of the Legislator, what authority had the City of New Orleans to paralyze and effectually nullify this disposition of the law, by relieving the treasurer from the performance of that obligation and entrusting it to another person, whether an officer or an individual, with provision for a remuneration charged as onerously exorbitant? R. C. C. 11 and 12.

To sanction such a proceeding by the city, would be to recognize in her the power, at her caprice, to abrogate and set at nought the will of her creator, the Law Giver, and to substitute her own, in its stead, regardless of the damage or injury occasioned thereby.

This assuredly is not permissible.

The dilemma is irresistible. Either the city dealt with the plaintiff as with one of its officers, and then his mandate terminated with the expiration of the term of the office of the City Attorney, whose assistant he was; or she dealt with him in his individual capacity, and then his mandate, which is for an indefinite period, and provides for no absolute compensation, ends by its revocation, and plaintiff has no standing in court.

We do not understand that the city claims that the plaintiff is to reimburse any remuneration to which he may have been entitled while the mandate existed, but simply that it be judicially declared that their relations have ceased. R. C. C. 3028.

Considering, therefore, that those relations were those of principal and agent, and further, that they arose in violation of prohibitory laws, we conclude that the city had the right not only to revoke, but to repudiate the acts from which they sprung.

The District Judge properly declined the injunctions.

Judgments affirmed.

Mr. Justice Poché, not having heard the argument, takes no part.