BAILES, Judge Pro Tem.
The defendant, Department of Revenue, State of Louisiana, and the third party defendant, American Telephone & Telegraph Company (AT&T), appeal the adverse judgment rendered against them by the trial court which awarded plaintiff attorney’s fee in the amount of $154,304.25, representing ten (10) per cent of a compromised tax and interest claim of $1,543,042.-56 collected by the Department of Revenue from AT&T. We affirm.
After having determined that the services of outside counsel were needed to handle the collection of the Department’s long standing claim for corporation franchise taxes for the years 1963 through 1971 against AT&T, and acting under the authority of the provisions of LSA-R.S. 47:1512, the Collector of Revenue entered into the following contract with plaintiff, to-wit:
“CONTRACT
“This contract, entered into the 28th day of August, 1972, between the Department of Revenue, State of Louisiana, (hereinafter referred to as ‘Client’), through its Collector of Revenue and General Counsel, and James F. Pierson, Jr. Attorney, (hereinafter referred to as ‘Attorney’), provides as follows:
“Article 1
“Employment of Private Counsel
“It is hereby agreed and contracted between Client and Attorney that Attorney will represent client in the file entitled AMERICAN TELEPHONE & TELEGRAPH CO., Legal File No. 667.
“Article II
“Right of Client to Discharge Attorney if Attorney Fails to Proceed with Due Diligence
“Attorney hereby agrees to proceed with due diligence regarding the above referenced lawsuit. If Attorney fails to proceed with reasonable diligence, Client has the right to discharge Attorney without compensation.
*406 “Article III
“Duty of Notification
“Attorney agrees to send to the Collector of Revenue and General Counsel copies of all correspondence and reports of verbal communication regarding the above captioned case.
“Article IV
“Settlement or Compromise
“It is hereby agreed and contracted between Client and Attorney that there can be no settlement or compromise of above referenced case without consent of both Client and Attorney.
“Article V
“Compensation and Reimbursement of Expenses
“It is hereby agreed and contracted Attorney will receive ten per centum (10%) of all amounts collected on behalf of Client, and Client will reimburse Attorney for all court costs.”
This contract, prepared by the Department of Revenue, was signed by Joseph N. Traigle, Collector of Revenue, State of Louisiana, J. Peyton Parker, General Counsel for the Department of Revenue, and was approved by the Office of the Governor, Department of Contractual Review on September 20, 1973. Also a signatory to the contract was the plaintiff represented by Curtis K. Stafford, Jr., an associate.
Immediately following this employment, plaintiff and his associate began their representation of defendant and commenced to assert efforts to collect the above stated taxes. Their initial effort is evidenced by letter to the local AT&T counsel, Mr. Victor A. Sachse, Jr., dated September 7, 1972. This letter interjected Mr. Pierson into the negotiations and dialogue between the defendant and AT&T. Efforts on the part of plaintiff continued, although without much apparent progress, until on August 7, 1973, plaintiff, through his associate, wrote local counsel for AT&T that it was their intention to file appropriate legal proceedings on August 10, 1973, to recover the subject taxes due for the years 1963— 1971. This action on the part of the plaintiff was the result of the general counsel for the Department advising him that the Department was “very anxious” to litigate as soon as possible. In this letter of August 7, 1973, above mentioned, plaintiff advised AT&T that in addition to the taxes-recovery would be sought of interest and attorney fees. Clearly, it was this letter which moved AT&T to take action on the State’s claim.
Following this letter of August 7, 1973, there was a meeting in Washington, D. C., between Mr. James H. Peters, tax attorney for the Long Lines Department of AT&T, and Mr. Traigle (both of whom were in Washington, D. C., attending to other matters) at which Mr. Peters requested that he and members of the Department of Revenue meet in Baton Rouge for the purpose of exploring a basis for settlement of the dispute. This meeting was held, as agreed, on September 11, 1973. Those in attendance included Peters, Mr. Victor A. Sachse, Jr., Victor A. Sachse, III and a Mr. Kugler, on behalf of AT&T, and for the Department were department auditors, Mr. Parker, general counsel, and plaintiffs associate.
At this conference guidelines were established for an audit of the AT&T records in New York City. Also certain preliminary agreements were reached looking toward a final resolution of the tax claim.
After the audit of the' AT&T records was completed, a comprehensive set of guidelines were drafted by the Collector’s staff under date of October 25, 1973. In keeping with the memorandum of' these guidelines, the plaintiff, by letter dated October 31, 1973, addressed to AT&T’s local counsel, itemized the Department’s tax claim for the years 1963 through 1972, *407 which, including interest, amounted to $3,660,804.66. Additional letters were addressed to AT&T’s local counsel on November 9, 1973 and November 16, 1973, urging prompt liquidation of this indebtedness.
At this point it appears the Collector took personal command of the negotiations between the parties. A meeting was held by Mr. Traigle on November 26, 1973, attended by Mr. Peters and Mr. Sachse, for AT&T, as well as certain Department personnel. Neither the plaintiff nor his associate were advised or notified by the Collector of the meeting.
Mr. Traigle, apparently believing that he had the authority to do so, and contending, first, that the plaintiff’s claim for attorney’s fee (as per contract) would jeopardize the Department’s negotiations for settlement, and secondly, according to his testimony, feeling a moral obligation to protect AT&T from excessive attorney’s fee liability, agreed with AT&T at this November 26, 1973, meeting to an attorney’s fee of $10,000 to $15,000. Subsequently, the proposed attorney’s fee settlement was adjusted upward by Mr. Traigle to $30,000 after plaintiff rejected the Collector’s unilateral determination of what was just and fair. Ultimately the plaintiff rejected all of the Collector’s proposed fee payment.
Being convinced that Mr. Pierson would not permit him (the Collector) to unilaterally determine what he should be paid by AT&T on the $1,543,042.56 tax and interest settlement, the Collector wrote plaintiff the following letter on December 6, 1973:
“Re: American Telephone & Telegraph Co.
“As you know, an offer to your firm in the amount of $30,000 for attorney fees for services rendered in this matter was tendered and rejected by you.
“This is to inform you that your services are no longer required in reference to the above entitled file. You are being relieved of your duties under the contract entered into with this department on August 28, 1972. Please have the file returned to this office within five (5) days from the date of this letter.”
Copies of this letter were addressed to Mr. James H. Peters and Mr. Victor A. Sachse, Jr.
Although interrogated fully and at considerable length and in detail about any negotiations with AT&T subsequent to the November 26, 1973, meeting, Mr. Traigle, although not admitting the fact, could not specify any substantive matter of the settlement concluded which was not in fact concluded on November 26, 1973.
Mr. Peters, by affidavit, stated:
<( * * *
“A further conference in Baton Rouge was held on November 26, 1973, at which affiant proposed to settle the matter by the company paying:
1971 $298,579.00
1972 $310,675.00
1973 $349,694.00
and $10,000.00 to $15,000.00 as attorney’s fees, with full reservation to dispute and litigate with respect to years subsequent to 1973. Neither Mr. Pierson nor Mr. Stafford were present. Later in the day Mr. Traigle advised that this would be satisfactory if the company also paid $283,388.50 for 1970, and so it was agreed.
“ * * * »
It should be mentioned here that Mr. Peters, when he testified in the trial court, attempted to explain that he did not prepare the affidavit and that it is not factually accurate. Even so, he did not deny the statement. Further, it should be noted that the testimony of both plaintiff and Mr. Stafford stands uncontradicted in this respect. Mr. Pierson testified that Mr. Dawson, general counsel who succeeded Mr. Peyton Parker, told him “the whole *408 thing had been settled.” In the discussion on November 27, 1973, and prior to December 6, 1973, between the Collector and Mr. Stafford relative to the attorney’s fee, the Collector plainly indicated that the fee was all that remained for completion of the agreement to compromise, and that an agreement had been reached on the taxes and interest.
On December 28, 1973, as a result of a suit filed therefor by the Collector, a consent judgment was rendered in favor of the Collector of Revenue, State of Louisiana, and against AT&T for the sum of $1,242,336.50 representing the principal of the corporation franchise tax claimed by the State for the years 1970 through 1973, plus interest on that amount as required by law. This suit was for the purpose of finalizing the compromise settlement. In the record of that suit, we find the following stipulation, which, in pertinent part, we quote:
“17
“It is further understood that in 1972 the Collector of Revenue retained outside counsel who purportedly relying on R.S. 37:218 and R.S. 47:1512 insists that the Collector of Revenue cannot settle this claim without his concurrence and -that he is entitled to an amount equal to ten (10%) per cent of any sum paid by the American Telephone & Telegraph Company in settlement of the claim of additional franchise tax in addition to the amount of tax and interest paid. The Collector disputes these claims. The outside counsel has been discharged by the Collector of Revenue. An offer was made in compromise to pay attorney’s fees of $30,000.00 in addition to the tax and interest set forth above, which the attorney has refused. This agreement in no way affects the liability of American Telephone & Telegraph Company for possible attorneys’ fees nor does the Department of Revenue by entering into this agreement assume any responsibility or liability that may be due under R.S. 47:1512 in connection with the handling of this matter. This agreement is not to be construed that either party considers any attorney’s fees to be due. If suit is filed against the Collector or the State or both pertaining to such attorney’s fees the Collector will defend the same.
“18.
“It is further stipulated by the parties that the amount being paid is for principal and interest only and does not include any legal fees in connection with this case. The Legal Division of the Department of Revenue will not assert any claim for legal fees, but in the event the courts should determine any attorney’s fees are due to counsel previously hired pursuant to R.S. 47:1512, such fees will be in addition to the tax and interest stated above.”
After the filing of the instant suit against the Department of Revenue, by appropriate pleading, the Department filed a third party petition against AT&T. The trial court rendered judgment in favor of plaintiff and against the Department as noted above, and further rendered judgment in the third party action in favor of the Department, and against the third party defendant, American Telephone and Telegraph Company, in the same amount as the State was cast in the main demand. The trial court further cast AT&T for all cost of those proceedings.
Our perusal of the record convinces us of the following salient facts
1. That the Collector of Revenue and-the plaintiff entered into a contingent fee contract wherein plaintiff was to receive, as attorney fee, 10 per cent of all amounts collected on behalf of the Collector of Revenue from the tax claim file entitled American Telephone & Telegraph Co., Legal File No. 667. (LSA-R.S. 37:218; 47:1512);
*409 2. That the plaintiff promptly, diligently and aggressively pursued his obligation of representation of the Collector. This was admitted by the Collector and testified to by the general counsel, Mr. Peyton Parker;
3. That the plaintiff and his associate were actively pursuing the tax claim against AT&T up to the November 26, 1973 conference, and their efforts and action in performance of the contract materially contributed to the ultimate settlement of the claim;
4. That the Collector superseded the plaintiff in the negotiations with AT&T and purposely excluded plaintiff and his associate from the November 26, 1973 conference ;
5. That the tax claim was settled through negotiations conducted by the parties at interest at the November 26 conference; and that the only phase not settled at this conference was the issue of the attorney’s fee.
6. That the plaintiff was discharged as attorney for the Collector on December 6, 1973; and
7. That plaintiff, and his associate performed plaintiff’s contractual duties satisfactorily and without complaint, and that the termination of the employment was not brought about by reason of his failure to keep his obligations under the contract.
It is particularly noteworthy that in its answer to the third party petition of the Department, AT&T made these judicial admissions of fact:
“29.
“By letter of October 31, 1973, Mr. Pier-son advised that as the result of the New York meeting ‘the auditors for the Department will make the following recommendations to the Collector.’
“30.
“Mr. Traigle and Mr. Peters arranged a further conference in Baton Rouge with respect to the proposed recommendations of which Mr. Pierson and Mr. Stafford were advised and which meeting took place in Mr. Traigle’s office in Baton Rouge. Counsel for Respondent was present as was Mr. David Dawson than and now counsel for the Collector of Revenue in place of Mr. J. Peyton Parker, Jr. Neither Mr. Pierson nor Mr. Stafford were present.
“31.
“After much discussion offer to settle past years by paying the amount claimed as tax and interest for the years 1971, 1972, and 1973, plus $10,000.00 ($15,000.00) as attorneys fees was made. Later that same day, November 8, 1973,[1] an agreement was reached by adding the year 1970.
“32.
“Subsequently, Mr. Traigle advised that Mr. Pierson was not satisfied with the attorney’s fee to be paid to him, and asked that discussion be conducted between Mr. Pierson and counsel for respondent as to such fee.
“33.
“Counsel for respondent advised that the Company would pay only the amounts specified for the years 1970, 1971, 1972, and 1973, plus $15,000.00.
“34.
“Mr. Traigle and Mr. Pierson did not agree on the allocation of the proposed payment which resulted in Mr. Traigle discharging Mr. Pierson by letter of December 6, 1973, copy attached Respondent Exhibit 4.
*410 “35.
“Thereafter the settlement was made by stipulation and consent judgment as previously averred by respondent the collector of Revenue being represented by Mr. David L. Dawson, his general counsel who claimed no attorney’s fees for his department.
« * * * »
Appellants contend the trial court committed error in holding:
1. That plaintiff had earned the fee before his discharge;
2. That a contingent fee contract authorized in LSA-R.S. 37:218 applied to collection of taxes; and
3. That outside counsel could rightfully interfere with the Collector in effecting a compromise settlement of the disputed taxes.
There can be no doubt that the law of this State is quite clear that a client may discharge his counsel at any time. This holds true whether the fee arrangement is a fixed or agreed sum or whether the fee is a contingent arrangement of a certain percentage of the amount recovered when recovered.
In support of this principle about which there is no adverse opinion herein AT&T cites LSA-C.C. Article 3028 and the holding in Gurley v. City of New Orleans, 41 La.Ann. 75, 5 So. 659 (1889). It then argues that the plaintiff, being lawfully discharged, is relegated to a claim for compensation in quantum meruit.
This whole argument of both the Department and the third party defendant, AT&T is premised on the position that plaintiff had not earned his contractual fee at the time of his discharge.
For the reasons stated hereinabove we find the contrary to be true. We affirmatively find, and so hold, that the plaintiff at the time of his discharge on December 6,1973, had earned his fee.
Passing now to the second and third assigned error, AT&T addresses the following argument to this issue:
“The collection of taxes is a function of officials and the tax, if due, belongs to the taxing authority, in this case the State, and the attorney cannot acquire an interest in the tax or the right to supercede or prevent the action of the Collector of Revenue. Indeed the Department of Revenue forcefully called this to the attention of outside counsel in its memorandum of February 28, 1973 (Exhibit D-3) mentioned above and R.S. 47:1512 shows that if attorney’s fees are collected they do not come from the tax or interest.
“We have been unable to find when R.S. 37:218 has been applied to a claim for taxes. Nor do we find a case under R.S. 47:1512 in which it is indicated that the attorney had a vested interest in the tax sought to be collected or a right to block settlement by the Collector of Revenue.”
As mentioned above LSA-R.S. 47:1512 authorizes the Collector to contract with private counsel in the collection of taxes. It provides:
“The collector is authorized to employ private counsel to assist in the collection of any taxes, penalties or interest due under this Sub-title, or to represent him in any proceeding under this Sub-title. If any taxes, penalties or interest due under this title are referred to an attorney at law for collection, an additional charge for attorney fees, in the amount of ten per centum (10%) of the taxes, penalties and interest due, shall be paid by the tax debtor.”
Our view is that this statute authorizes the Collector to enter into a contingent fee contract in securing the services of outside or private counsel to assist *411 in the collection of any taxes, penalties or interest, and it provides for an additional charge for attorney fees in the amount of ten per centum, and further that this fee shall be paid by the tax debtor.
We find no conflict between this statute and the contingent fee contract authorized by LSA-R.S. 37:218. When R.S. 37:218 and 47:1512 are considered together, we conclude that the Collector had the authority to enter into the contract which he, in fact, did enter into with plaintiff on August 28, 1972, as above noted. Thus the Department, through the action of the Collector, approved by the Governor’s office, was as much bound thereby as was the plaintiff. It must follow that the Collector had no authority to unilaterally dictate to plaintiff the fee he, the plaintiff, should receive for his service for the concluded contract. This was fixed by contract and the parties involved must honor its provisions.
The plaintiff did not block the settlement reached on the Department’s claim for taxes and interest, therefore, we are not called upon to inquire into whether he had a right to block settlement by the Collector.
Inasmuch as the plaintiff fulfilled his obligations under the contract to the conclusion of the settlement to the full extent he was permitted by the Collector during the existence of the employment, he is entitled to receive the fee fixed by the contract. See: Doucet v. Standard Supply & Hardware Company et al., 250 So.2d 549 (La.App. 3rd Cir. 1971), and Lytle v. Commercial Insurance Company of Newark, N. J., 285 So.2d 289 (La.App. 3rd Cir. 1973).
Accordingly, for the foregoing reasons, the judgment appealed is affirmed. Cost of this appeal to be paid by third party defendant, American Telephone & Telegraph Company.
Affirmed.

. The date “November 8, 1973”, obviously should be November 26, 1973, as no meeting was held on November 8, 1973.