DIXON, Chief Justice.
Writs were granted in this case to consider an attorney’s suit for costs and expenses advanced by a lawyer in a contingency fee case. The trial court and court of appeal, 400 So.2d 1144 (La.App.), dismissed the suit at plaintiff’s cost. We affirm.
Plaintiff, Margaret Coon, an attorney, represented defendants Deborah Sims and her father, Everett Sims, in their action for damages resulting from an automobile accident. A judgment against James Knight was obtained, but Coon alleges she was unable to enforce it because Knight had left the state. Plaintiff billed the defendants for the costs of prosecuting the claim. Defendants refused to pay because nothing had been collected on their judgment. Mr. Sims sent a $25.00 check to Ms. Coon, but he stopped payment before she could cash the check. Plaintiff withdrew as counsel of record in Sims v. Knight; she then filed this suit to collect $481.83 in expenses. The petition was amended to demand $1000 in attorney’s fees on a quantum meruit basis.
The issue is whether plaintiff may be awarded fees and costs of the suit against Knight when no collection was made on behalf of her clients. Ms. Coon and the defendants entered into a valid contingency fee contract. See R.S. 37:218; Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102 (La.1979). The contract provides the attorney will be entitled to reimbursement of expenses incurred in addition to any fees earned. There is no specific reference in the contract about payment when no collection has been made.
The following provision of the contract is at issue in this case:
“I hereby agree that said Attorneys shall receive and recover in addition to any fee earned by said Attorneys hereunder, the amount of all costs, disbursements and *264 expenses incurred by said Attorneys in prosecuting my case to a proper conclusion.”
The contract allows the attorney recovery of fees and expenses in prosecuting the case to a “proper conclusion.” No money has been collected for respondents, but plaintiff maintains she is entitled to her expenses because an unenforceable judgment was the “proper conclusion” to this ease. This litigation ended with an unexecuted judgment and was not properly concluded. Ms. Coon was repeatedly warned by the Sims that Knight would be an evasive judgment debt- or. Knight’s wife sent several letters to Coon informing her the Knights would be going to Wisconsin allegedly because of an illness in the family. These facts did not prompt Ms. Coon to be expeditious in enforcement of the judgment against Knight. There is no evidence in the record to indicate that any attempt was made by Ms. Coon to collect the judgment against Knight.
Ms. Coon demanded payment of costs advanced by her on August 22,1979, filed suit against her clients on October 11, 1979, learned Knight’s address (from the Baton Rouge post office) on October 16, 1979 and sent Knight’s address to the Sims on November 5, 1979, advising them to retain a Wisconsin lawyer to collect the judgment. Then, on November 9,1979, Ms. Coon withdrew as counsel for the Sims.
“Proper conclusion” is a term that the contract does not explain. Civil Code articles 1958[1] and 1959 [2] apply to contracts that cause doubt as to their meaning. The construction of such contracts must be made against the party who prepared the contract. The scope of interpretation is limited by the intent of the parties.
Respondents testified they understood the contract to mean plaintiff would receive a percentage of the amount recovered. They did not expect to pay Ms. Coon if there was no recovery. They testified that Ms. Coon said they need not pay until Ms. Coon collected the money. Plaintiff contends the contract obligates respondents to reimburse her for expenses incurred despite its contingency basis. Plaintiff testified she did not remember explaining to her clients that they would be liable for expenses if there was no recovery. She testified she sent the contract to their home early in their association, but that they had no questions about it when they returned to her office.
Ms. Coon was the author of the contract and attorney for the Sims. Civil Code articles 1958 and 1959 dictate construction of the contract in a light most favorable to the defendants. It is unrealistic to expect lay persons to understand they will be liable for expenses regardless of recovery after having signed a contract where the attorney agrees to advance the costs and expenses, and the attorney’s fees are based on a percentage of their recovery. The “proper conclusion” of the suit, in the minds of the defendants, was receiving money for the damages they had sustained. Ms. Coon would receive her fees and expenses from that recovery.
There have been various interpretations of contingency fee contracts in Louisiana’s jurisprudence. Suits for fees on contingency agreements initially placed the attorney in the role of a mandate for his client. The mandate was revocable at the will of the client unless the attorney was vested with an interest in the amount claimed. Clients discharged their attorneys with impunity in Gurley v. City of New Orleans, 41 La.Ann. 75, 5 So. 659 (1889) and Louque v. Dejan, 129 La. 519, 56 So. 427 (1911).
Dicta in Flower v. O’Conner, 7 La. 198 (1834) expressed the rule that an attorney *265 could not stipulate for an interest in the thing in controversy. An attorney could contract for a commission on the collections to be made.
Mazureau & Hennen v. Morgan, 25 La.Ann. 281 (1873) dealt with the statute of 1808 [3] that prohibited an attorney from bargaining with a client to obtain a portion of the land or property in dispute as compensation. Mazureau and Hennen contracted for a one-third interest of the property gained by suit. There was to be no fee if no recovery was made; however, the suit was successful. The attorneys sued for partition of the property to obtain their one-third interest. The court held the contract was in direct violation of the statute of 1808. A claim for attorneys’ fees based on quantum meruit was denied. The court held the contract was the law between the parties. Thus, once the contract was proven, no alternative quantum meruit action was allowed.
Contingency fee contracts were more liberally interpreted in Martinez v. Succession of Vives, 32 La.Ann. 305 (1880). Attorneys stipulated for a 10% commission on the amount collected. The court held the contract was valid because it did not transfer a part of the judgment. The fee would only be realized by enforcement of the judgment.
Andirac v. Richardson, 125 La. 883, 51 So. 1024 (1910), held it was lawful for an attorney to obtain as his fee a 50% commission on the amount collected. Act 124 of 1906 was interpreted to grant attorneys a first privilege on judgments obtained for their fees. Contingency fee contracts that gave an attorney an interest in the subject matter of the suit were also validated by Act 124.
An excellent discussion of contingency fee contracts in Louisiana is contained in Succession of Carbajal, 139 La. 481, 483, 71 So. 774, 775 (1916). Chief Justice Monroe described the evolution of contingency fee contracts in the following passage:
“We may start with the proposition that prior to the passage of Act No. 124 of 1906, a contract for a contingent fee gave an attorney no interest in the subject-matter of the litigation to which the contract might relate, but entitled him only to a privilege upon the judgment, if and when obtained, and that, notwithstanding such contract, it was within the power of the client to discontinue the suit at will, leaving to the attorney his right of action on quantum meruit for services rendered. Rev.St. § 2897; Louque v. Dejan, 129 La. 526, 56 South. 427, 38 L.R.A.(N.S.) 389; Gurley v. City of New Orleans, 41 La.Ann. 75, 5 South. 659. In fact, until that act was passed, a contract between an attorney and client, whereby the former was to receive as compensation for his services ‘any portion of the land or any other property * * * in dispute or sued for’ was ‘null and void to all intents and purposes,’ according to the express language of the act of 1808 (Mazureau & Hennen v. Morgan, 25 La.Ann. 281), though in Flower v. O’Conner, 7 La. 207, a distinction was drawn between a portion of, or interest in, the property sued for, and a commission on the amount sued for, and that distinction has since been recognized. Martinez v. Succession of Vives, 32 La.Ann. [305, 308]; Andirac v. Richardson, 125 La. 883, 51 South. 1024. The act of 1906 (page 210) reads as follows:
‘Be it enacted * * * that section 2897 of the Revised Statutes of 1870 be amended and re-enacted so as to read as follows: ‘In addition to the privileges enumerated in title twenty-first of the Civil Code, * * a special privilege is hereby granted to attorneys at law for the amount of their professional fees on all judgments obtained by them, and on the property recovered by said judgment, either as plaintiff or defendant, to take rank as. a first privilege thereon.
‘Provided that, by written contract, signed by the client, attorneys at law may acquire as their fee in such matter an *266 interest in the subject-matter of the suit, proposed suit or claim, in the prosecution or defense of which they are employed, whether such suit or claim be for money or for property, real, personal or of any description whatever.
‘And in such contract of employment, it shall be lawful to stipulate that neither the attorney nor the client shall have the right, without the written consent of the other, to settle, compromise, release, discontinue or otherwise dispose of such suit or claim.
^Either party to said contract shall have the right at any time to file same with the clerk of the district court where the suit is pending or is to be brought, and to have a copy made and served on the opposing party and due returns made as in case of petitions in ordinary suits; from and after the date of such service, any settlement, compromise, discontinuance or other disposition made of such suit or claim by either the attorney or the client without the written consent of the other, shall be null and void, and such suit or claim shall be continued and proceeded with as if no such settlement or discontinuance had been made.’ ”
Attorneys may prepare contingency fee contracts that provide for reimbursement of their expenses when there is no recovery. Such a reduction of risks for the lawyer, however, should be reflected in the amount of the fee. This contract provided the following:
“RETAINER AGREEMENT
I, the undersigned, do hereby employ and retain Margaret Ann Coon, Attorney at Law to render legal services on behalf of Everett E. Sims and Deborah Ann Sims against Mr. James A. Knight or any other person, firm or corporation liable in damages for personal injuries and/or for any other claim or claims of any kind whatsoever sustained by Everett E. Sims and Deborah Ann Sims on or about the 25th day of January, 1977, as the result of an automobile collision at or about 400 Government Street, Baton Rouge, Louisiana.
In addition to furnishing said legal services, said Attorneys agree to advance all costs and expenses necessary to prosecute said claim to a proper conclusion.
In addition to furnishing said legal services and advancing the aforesaid costs and expenses, said Attorneys shall have the right to retain the services of any experts, including but not limited to medical doctors, investigators, court reporters, and others whose services said Attorneys deem necessary to prosecute said claim to a proper conclusion, and the cost thereof shall be recoverable by said Attorneys in addition to any fee or fees that said Attorneys shall become entitled to hereunder.
In consideration of said Attorneys performing said legal services and advancing the necessary costs and expenses required to prosecute said claim to a proper conclusion, I do hereby agree to pay said Attorneys 33V3% of any settlement made in said case if same is settled at any time prior to the filing of suit; 40% of any settlement made, judgment rendered or verdict obtained after the filing of suit and 50% of any settlement made, judgment rendered or verdict obtained in the event said action is appealed, whether said appeal is perfected or not.
In further consideration of the services to be rendered and the obligations herein-above assumed by said Attorneys, I do by these presents assign, transfer and deliver unto said Attorneys an undivided interest in the subject matter of my claim and/or in any suit or suits filed thereon by said Attorneys, said percentage of interest amounting to 33V3% prior to the filing of suit by Attorneys; 40% after the filing of suit by Attorneys and 50% if the case is appealed (whether said appeal is perfected or not), it being my intent to vest said Attorneys with an interest in the subject matter of my claim and any suit or suits filed thereon by said Attorneys, as permitted by L.S.A.-R.S. 37:218 and afford to said Attorneys all of the rights and protection granted by said statute.
*267 I hereby agree that said Attorneys shall receive and recover in addition to any fee earned by said Attorneys hereunder, the amount of all costs, disbursements and expenses incurred by said Attorneys in prosecuting my case to a proper conclusion.
I hereby agree with said Attorneys not to make any settlement unless they are present and receive their share in accordance with this agreement and it is further agreed that the claim shall not be compromised or settled without the written consent of all parties.
I further hereby agree with said Attorneys not to discontinue or dismiss any suit filed on my behalf by said Attorneys, nor discontinue or dismiss any appeal, application for writs, or any other proceedings, legal or quasi-legal, of any type whatsoever arising out of the subject matter of this contract without the written consent of said attorneys.
If the claim is only for workmen’s compensation benefits, the fee will be 20% of the first $5,000.00 of recovery and 10% of all amounts recovered over that, as fixed by law.
I do hereby bind my heirs, executors and legal representatives to the terms and conditions set forth herein.
I HAVE READ AND FULLY UNDERSTAND THE ABOVE CONTRACT. Dated at Baton Rouge, Louisiana, this 26th day of October, 1977.
WITNESSES:
3/ Kathryn H. Kachelmyer Kathryn H. Kachelmyer
s/ Deborah Ann Sims _ Client DEBORAH ANN SIMS
s/ Everett E. Sims_ Client EVERETT E. SIMS
Margaret Ann Coon
200 Government Street
Suite 170
P. O. Box 643
Baton Rouge, Louisiana '70821
Telephone (504) 383-7827
By s/ Margaret A. Coon MARGARET A. COON”
The graduated percentages of 33V3%, 40% and 50% used by Ms. Coon do not reflect a reduction of her risks that would correspond to a guaranteed payment for her expenses.
Contingency fee contracts that provide for clients to assume costs of litigation, when there is no recovery, must be written in clear and unambiguous language leaving no doubt about their meaning. They must be fully understood by the clients upon signing. Justice Tate[4] commented on this issue in footnote 1 of the majority opinion in Louisiana State Bar Association v. Edwins, 329 So.2d 437, 445 (La.1976):
“1. In addition to court costs, investigation costs, the expenses of medical examination for purposes of trial, and the costs of obtaining and presenting evidence, certain other out-of-pocket expenses were charged to Thomas: telephone calls, out-of-town travel at twelve cents per mile, and the hotel expenses of the out-of-town trial. The contract between Thomas and Edwins was silent with regard to liability for the latter (about $500) expenses. In the absence of other contractual arrangement, we do not find irregularity in charging such expenses to the client’s account, to be reimbursed upon final settlement (and they are shown by the present record to be reasonable); but the better practice might well be to have liability for such latter-type out-of-pocket expenses to be clearly assumed or not by the client at the time of the retainer, so as to prevent misunderstanding and dissatisfaction such as here resulted.”
Attorneys sued their clients for expenses of the suit in Lazarus, Michel & Lazarus v. Veazey, 151 La. 790, 92 So. 338 (1922). The clients were held liable for the costs of an interdiction suit concerning their mother. Plaintiff has relied heavily on this case; however, Lazarus is inapplicable to these facts. The Lazarus decision grew out of an interdiction suit titled Ruiz v. Pons, 141 La. 110, 74 So. 713 (1917). Civil Code article 397 governed liability for expenses of an interdiction suit. The costs were to be borne by the interdict if the defendant was interdicted, and by the plaintiffs if there was no interdiction.
*268 The defendant, Mrs. Pons, died before the interdiction was adjudicated. The Ruiz court reasoned that the interdiction suit was an action that was personal to the defendant. Thus, her death abated the suit. The court relied on the rules pertaining to the abatement of actions to award costs against the plaintiffs.[5] The Lazarus decision, therefore, was not made under the pretext that clients must be liable for expenses of litigation on contingency fee contracts. Lazarus was the result of this court’s application of Civil Code articles on interdiction and abatement of actions.
Plaintiff demands recovery on a theory of unjust enrichment. Her former clients have not received any compensation, therefore they have not been enriched by plaintiff’s actions as their attorney. Cases that have allowed attorneys to recover fees or expenses on an unjust enrichment theory have one major fact in common. The clients in those cases collected money on their judgments. See Lazarus, Michel & Lazarus v. Veazey, supra; Henican, James & Cleveland v. Strate, 348 So.2d 689 (La.App.1977); Doucet v. Standard Supply & Hardware Co., 250 So.2d 549 (La.App.1971). The Sims have not been so fortunate, and recovery based on unjust enrichment is denied.
Plaintiff submits that Canon 5 of the Ethical Considerations and Disciplinary Rule 5-103(B) of the Louisiana State Bar Association Code of Professional Responsibility requires the client to be ultimately liable for expenses of the suit. However, the Code does not place this liability upon the client when there has been no recovery on the contingency fee contract. Certainly the expenses of the suit will be deducted from the plaintiff’s award when there has been collection on the judgment.
The final argument of plaintiff is that Everett Sims acknowledged a debt to her by sending a $25.00 check.[6] There can be no acknowledgement of a debt that never existed. The Sims did not have an obligation for expenses of the suit because Ms. Coon had failed to fulfill the suspensive condition of the contract. The suspensive condition was that Ms. Coon prosecute the case to a proper conclusion. Creation of the obligation, therefore, depended on a future and uncertain event. See C.C. 2043.[7] As discussed above, a proper conclusion was reasonably believed by the Sims to be receipt of money for the damages sustained. Ms. Coon would have fulfilled the suspen-sive condition of prosecuting the case to a “proper conclusion” by collecting the judgment. At that point the Sims would have been obligated for expenses of the suit out of their award for damages. Since there was no recovery, no obligation was made. Thus, the check could not have acknowledged a debt on behalf of the Sims.
Consequently, the contract did not make defendants liable for the costs of a suit from which they collected nothing. The decisions of the trial court and court of appeal are affirmed; plaintiff is cast for all costs of this litigation.
LEMMON, J., concurs.
CALOGERO and DENNIS, JJ., concur and assign reasons.
WATSON, J., concurs in the result, but is of the opinion that the writ should have not issued.
MARCUS and BLANCHE, JJ., dissent and assign reasons.

. C.C. 1958 provides:
“But if the doubt or obscurity arise for the want of necessary explanation which one of the parties ought to have given, or from any other negligence or fault of his, the construction most favorable to the other party shall be adopted, whether he be obligor or obligee.”

. C.C. 1959 provides:
“However general be the terms in which a contract is, couched, it extends only to the things concerning which it appears that the parties intended to contract.”

. Statute of 1808 (March 31, 1808).

. He is now a Judge of the United States Court of Appeals, Fifth Circuit.

. In re Jones, 117 La. 106, 41 So. 431 (1906) was cited as an example of an interdiction suit abated by the death of the defendant. The plaintiffs were ordered to pay costs.

. A stop payment order was issued, and the check was not cashed.

. C.C. 2043 provides:
“The obligation contracted on a suspensive condition, is that which depends, either on a future and uncertain event, or on an event which has actually taken place, without its being yet known to the parties.
In the former case, the obligation can not be executed till after the event; in the latter, the obligation has its effect from the day on which it was contracted, but it can not be enforced until the event be known.”